1  LIONEL Z. GLANCY (134180)
   MICHAEL M. GOLDBERG (188669)
2  MARC L. GODINO (182689)
   GLANCY BINKOW & GOLDBERG LLP
3  1925 Century Park East, Suite 2100
   Los Angeles, CA  90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
5  E-mail:   lglancy@glancylaw.com
             mmgoldberg@glancylaw.com
6            mgodino@glancylaw.com

7  *Attorneys for Plaintiff Michael Shields*
   [Additional Counsel Listed on Signature Page]
8

                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHIELDS, on Behalf of Himself and All Others Similarly Situated, | Case No. **'14CV0752 GPC DHB** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE NEIMAN MARCUS GROUP, LLC, | |
| Defendant. | |

Plaintiff brings this class action against Defendant The Neiman Marcus Group, LLC ("Neiman Marcus") for violations of California law arising out of data breaches of private, confidential information for Neiman Marcus customers.

## INTRODUCTION

1. The class action arises out of a massive data breach at Defendant Neiman Marcus which affected at least 350,000 customers. On or before July 2013 malicious software was installed on Neiman Marcus's computer system. The software collected credit card data from Neiman Marcus customers from July 16, 2013 through October 30, 2013 (the "Class Period"). Although Neiman Marcus had evidence of the breach in December 2013, it did not reveal the breach to its customers. The breach was first revealed to the public by a blogger on January 10, 2014. In response, Neiman Marcus admitted the breach on its Twitter account on January 10, 2014. Defendant admitted on a conference call with credit card companies on January 13, 2014, that the breach was not fully contained until January 11, 2014.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), in that the plaintiff and defendant have diverse citizenship and the amount in controversy exceeds $5 million.

3. The Court has personal jurisdiction over the defendant because defendant is authorized to and conducts substantial business in California and in this District.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial number of clients giving rise to this action occurred in this District.

## PARTIES

5. Plaintiff Michael Shields is a resident of San Diego, California who made purchases at a Neiman Marcus department store in San Diego with his American Express credit card during the Class Period.

6. Defendant Neiman Marcus is a Delaware limited liability company headquartered in Dallas, Texas. Neiman Marcus is an American luxury specialty department store. Millions of Americans regularly shop at Neiman Marcus stores.

7. Defendant operated retail stores within this District.

## BACKGROUND

8. Identity theft, which costs Americans approximately $54 billion per year, occurs when an individual's personal identifying information is used without his or her permission to commit fraud or other crimes. Victims of identity theft typically lose more than 100 hours dealing with the crime, and they typically lose over $500.

9. According to the Federal Trade Commission:

> Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

10. The Government Accounting Office ("GAO") has stated that identity thieves can use identifying data to open financial accounts and incur charges and credit in a person's name. As the GAO has stated, this type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft and can cause significant harm to the victim's credit rating. Like the FTC, the GAO explained that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well as damage to their "good name."

11. Identity theft crimes often encompass more than just immediate financial loss. Identity thieves often hold onto stolen personal and financial information for several years before using and/or selling the information to other identity thieves.

12. Accordingly, federal and state legislatures have passed laws to ensure companies protect the security of sensitive personally identifying confidential information, such as that wrongfully disclosed by Neiman Marcus.

13. The FTC has issued a publication entitled, "Protecting Personal Information: A Guide for Business" ("FTC Report"). The FTC Report provides

3
**CLASS ACTION COMPLAINT**

guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identity theft. To protect the personal sensitive information in their files, the FTC Report instructs businesses to follow, *inter alia*, the following guidelines:

   a. Keep inventory of all computers and laptops where the company stores sensitive data;

   b. Do not collect confidential personal identifying information if there is no legitimate business need. If there is a legitimate business need, only keep the information as long as necessary;

   c. Encrypt the confidential personal identifying information particularly if the sensitive information is shipped to outside carriers or contractors. In addition, the business should keep an inventory of all the information it ships;

   d. Do not store sensitive computer data on any computer with an Internet connection unless it is essential for conducting the business;

   e. Control access to sensitive information by requiring that employees use "strong" passwords; tech security experts believe the longer the password, the better; and

   f. Implement information disposal practices reasonable and appropriate to prevent an unauthorized access to personally identifying information.

14. The FTC Report also instructs companies that outsource any business functions to proactively investigate the data security practices of the outsourced company and examine their standards.

15. Many private industries, such as the Payment Card Industry Security Standards Council, also set forth detailed security protocols for businesses that obtain personally identifying information for their customers. Unfortunately, upon information and belief, Neiman Marcus is in violation of the Payment Card Industry Security Standard and numerous other basic standards because of the following conduct: (1) improperly storing and retaining credit card transaction and customer data in an encrypted, unsecured, and unauthorized manner; (2) failing to take all reasonable steps to destroy, or arrange for the destruction of customer records within its custody or control containing personal information which is no longer authorized to be retained by the business by failing to erase or otherwise modify the personal information to make such unreadable or undecipherable through any means; (3) failing to properly install, implement, and maintain a firewall to protect consumer data; (4) failing to properly analyze and restrict IP addresses to and from its computer systems and servers; (5) failing to perform dynamic packet filtering; (6) failing to properly restrict access to its computers; (7) failing to properly protect stored data; (8) failing to encrypt cardholder data and other sensitive information; (9) failing to properly implement and update adequate anti-virus and anti-spyware software that

would properly prevent unauthorized data transmissions caused by viruses, executables or scripts from its servers or computer systems; (10) failing to track and monitor all access to network resources and cardholder data; and (11) failing to regularly test security systems and processes or maintain an adequate policy that addresses information security, or to run vulnerability scans.

## DATA BREACH AT NEIMAN MARCUS

### A.     Neiman Marcus's Actions Prior to the Breach

16.     In an effort to calm consumers' reasonable apprehensions regarding the risk of identity theft attendant to online transactions, Neiman Marcus' "Privacy Policy" falsely represents to Neiman Marcus' customers that "[a]ccess to your personal information is restricted. Only employees who need access to your personal information to perform a specific job are granted access to your personal information."

17.     Neiman Marcus' website further promises and boasts that "Neiman Marcus.com servers are protected by secure firewalls -- communication management computers specially designed to keep information secure and inaccessible by other Internet users. So *you're absolutely safe while you shop*."  (Emphasis added). Unfortunately, this promise is untrue.  Indeed, because Neiman Marcus negligently fails to comply with industry standards or even implement rudimentary security practices, online shoppers are less than "absolutely" safe shopping with Neiman

Marcus and are substantially less safe than they are when shopping with comparable vendors.

### B. Breach at Neiman Marcus

18. At some point prior to July 16, 2013, malicious software was installed on Neiman Marcus's computer system. This "malware" collected credit card data from Neiman Marcus customers from July 16, 2013 through October 30, 2013. Over at least 350,000 credit cards were potentially visible to the malware and at least 9,300 unique credit cards were used fraudulently as a result.

19. The malware was designed to hook into cash registers to monitor the credit card authorization process. Before a transaction can be authorized, credit card data is momentarily decrypted and stored in memory. Called RAM-scraping malware, it is built to scrape that unencrypted data from memory and steal it, according to a private report issued by iSight Partners, which is working with the Department of Homeland Security to investigate the retail attacks.

### C. The Breach Is Discovered

20. Neiman told credit card companies around Christmas, in an industry phone call, that it had evidence that credit cards used at Neiman Marcus were being used to make fraudulent purchases.

21. News of the data breach was first published by a blogger (Brian Krebs of http://krebsonsecurity.com/) on or about January 10, 2014, before Neiman Marcus

made any attempt whatsoever to notify affected customers.

22. As widely reported by multiple news services on January 10, 2014: "[A] forensics firm confirmed evidence the upscale retailer was a victim of a criminal cybersecurity intrusion and some customers' credit and debits cards were possibly compromised."[1] Neiman Marcus announced that "customers' names, credit and debit card numbers, card expiration dates, debit-card PINs and the embedded code on the magnetic strip on the back of cards had been stolen." *Id.*

23. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

24. As the news broke, Neiman Marcus finally released a statement concerning the data breach, but it was not designed to notify affected customers directly. Rather, Neiman Marcus posted a statement on its Twitter account (not on the shopping site regularly accessed by customers) on January 10, 2014, vaguely indicating: "The security of our customers' information is always a priority and we sincerely regret any inconvenience";[2] and "We are taking steps, where possible, to notify customers whose cards we know were used fraudulently after purchasing at

---

[1] http://www.bostonglobe.com/news/nation/2014/01/12/neiman-marcus-latest-victim-security-breach/pZHhuxgM2Nnl5YtVQZHi6K/story.html (last visited April 1, 2014).

[2] https://twitter.com/neimanmarcus/status/421869581364256768 (last visited April 1, 2014).

our stores."[3]

25. On January 12, 2014, Ginger Reeder, a spokeswoman for Neiman Marcus, indicated in a press email that "the retailer had been notified in mid-December by its credit card processor about potentially unauthorized payment activity following customer purchases at stores."[4] Ms. Reeder "wouldn't estimate how many customers may be affected but she said the merchant is notifying customers whose cards it has now determined were used fraudulently." *Id.*

26. On January 23, 2014, Neiman Marcus admitted that as many as 1.1 million shoppers could have been affected by the breach. It also admitted the breach lasted from July 16, 2013 to October 30, 2013. The Neiman Marcus website states the breach occurred from July 16, 2013 to October 30, 2013, but Neiman Marcus admitted on a conference call with credit card companies on January 13, 2014, that the breach wasn't fully contained until January 11, 2014.

27. On February 14, 2014, Neiman Marcus revealed that they had identified approximately 350,000 credit cards that were affected by the malware, and 9,200 of those cards were subsequently used fraudulently.

28. It was also revealed that the data breach set off alerts, indicating possible

---

[3] https://twitter.com/neimanmarcus/status/421869964903972864 (last visited April 1, 2014).

[4] http://bigstory.ap.org/article/neiman-marcus-victim-cyber-security-attack (last visited April 1, 2014).

9
**CLASS ACTION COMPLAINT**

suspicious behavior, on the Company's security systems approximately 60,000 times over a three-and-a-half month period, but such alerts were ignored by the Company.

29. On information and belief, there is a substantial likelihood that Plaintiff's identifying and financial information was disclosed in the data breach.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this class action for injunctive relief, restitution, and other equitable and monetary relief on behalf of a class consisting of all persons in the United States who made purchases by credit card at a Neiman Marcus store or on-line from July 16, 2013 to October 30, 2013, and whose personal and/or financial information was breached. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns.

31. Plaintiff reserves the right to amend or modify the definition of the Class with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

32. Plaintiff will fairly and adequately represent the members of the Class, and has engaged experienced and competent class action counsel.

33. Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of members of the Class is presently

unknown, and can only be ascertained through appropriate discovery, Plaintiff believes that such individuals number in the hundreds of thousands, if not millions.

34. There is a well-defined community of interest in the questions of law and fact underlying the claims of each member of the Class, and these common questions predominate over any questions that may affect individual members of the Class. The common questions of fact and law include, but are not limited, the following:

- Whether the breach violated the California Data Breach Act;
- Whether the breach was a result of Defendant's negligence; and
- Damages suffered as a result of Neiman Marcus's conduct.

35. Absent a class action, it would be highly unlikely that Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits would exceed their expected recovery.

36. Certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate the relief sought on behalf of the Class as a whole. Further, given the large number of consumers who transacted business via credit card with Neiman Marcus, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

37. A class action is a superior and appropriate method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## COUNT I
## VIOLATION OF THE CALIFORNIA DATA BREACH ACT
### CAL. CIV. CODE § 1798.80 *et seq*.
### (On Behalf of Plaintiff and the Class)

38. Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth fully herein.

39. The data breach constituted a "breach of the security system" pursuant to California Civil Code § 1798.82(g).

40. The compromised data constituted "personal information" pursuant to California Civil Code § 1798.80(e).

41. Section 1798.82 (a) of the California Civil Code requires disclosure of data breaches "in the most expedient time possible and without reasonable delay . . ."

42. Neiman Marcus unreasonably delayed in revealing the data breach. Specifically while Neiman Marcus knew of the data breach in December 2013, the true nature of the data breach was not revealed until weeks later.

43. Plaintiff, on behalf of himself and the class, seeks all available remedies under Section 1798.84, including actual damages, statutory damages, and equitable relief.

44. Plaintiff also seeks reasonable attorneys' fees and costs, in accordance with Section 1798.84(g).

## COUNT II
## COMMON LAW NEGLIGENCE
### CAL. CIV. CODE § 1798.80 *et seq*.
### (On Behalf of Plaintiff and the Class)

45. Plaintiff hereby incorporates by reference each paragraph of this Complaint, as if fully set forth herein.

46. Defendant has a duty to follow standard and procedures to secure financial and personal information in merchant transactions.

47. Plaintiff and the class have a right to rely that Defendant follow such standards and procedures to secure financial and personal information in merchant transactions.

48. Defendant systematically failed to monitor its computer security and unauthorized accessibility and other requirements for security management, policies,

procedures, network architecture, software design and other critical protective measures.

49. Defendant failed to use encryption and other common forms of data protection to secure customer data sufficient that it would not be susceptible to theft.

50. By not using widely accepted and adequate network security, Defendant was negligent in their duty to safeguard customer data.

51. Furthermore, Defendant was negligent in failing to promptly notify customers or the breach as soon as it became aware of the breach.

52. As the result of Defendant's conduct, Plaintiff and the class were harmed.

## **JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all the claims asserted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the proposed class members request that the Court enter an order or judgment against Defendant including the following:

A. Certification of the action under the Federal Rules of Civil Procedure and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B. Statutory and actual damages, and such other relief as provided by the

statute cited herein;

C. Prejudgment and post-judgment interest on such monetary relief;

D. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unfair, unlawful, and/or deceptive conduct alleged herein;

E. Equitable relief in the form of an injunction in that unless Target's unlawful practices are enjoined, Plaintiff and the Class will continue to suffer irreparable injury; to this extent, their remedy at law is inadequate, and they are entitled to injunctive and other equitable relief herein requested

F. The costs of bringing this suit, including reasonable attorneys' fees; and

G. All other relief to which Plaintiff and members of the proposed Class may be entitled at law or in equity.

Dated:  April 1, 2014

                **GLANCY BINKOW & GOLDBERG LLP**

                By: *s/Michael Goldberg*
                    Lionel Z. Glancy
                    Michael Goldberg
                    Marc Godino
                1925 Century Park East, Suite 2100
                Lost Angeles, CA  90067
                Telephone: (310) 201-9150
                Fax: (310) 201-9160
                lglancy@glancylaw.com
                mmgoldberg@glancylaw.com
                mgodino@glancylaw.com

**GLANCY BINKOW & GOLDBERG LLP**
Brian P. Murray
122 East 42nd Street
Suite 2920
New York, NY 10168
Telephone: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com

**LAW OFFICES OF PAUL C. WHALEN P.C.**
565 Plandome Road
Manhasset, New York 11030
Telephone: (516) 426-6870

*Attorneys for Plaintiff Michael Shields*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Michael Shields

## DEFENDANTS
The Neiman Marcus Group, LLC

**(b)** County of Residence of First Listed Plaintiff: San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant:
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Goldberg, Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067 (310) 201-9150

Attorneys *(If Known)*

'14CV0752 GPC DHB

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability |  | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application |  |  |
|  |  / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 448 Education / ☐ 550 Civil Rights |  |  |  |
|  |  / ☐ 555 Prison Condition |  |  |  |
|  |  / ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)
Brief description of cause:
Violation of CA Data Breach Act; Common Law Negligence

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $ 
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: M. James Lorenz
DOCKET NUMBER: 3:14-cv-00597-L-RBB

DATE: 04/01/2014
SIGNATURE OF ATTORNEY OF RECORD: s/Michael Goldberg

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE